MICHAEL F. HERTZ
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
VINCENT M. GARVEY
Deputy Branch Director
ANTHONY J. COPPOLINO
Special Litigation Counsel
MARCIA BERMAN
Senior Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782—Fax: (202) 616-8460

*Attorneys for the Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br>This Document Solely Relates To:<br><br>*Al-Haramain Islamic Foundation of Oregon et al. v. Barack Obama, et al.* (07-cv-109-VRW) | No. 3:06-md-1791-VRW<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY FEES**<br><br>Date:          (*No Hearing Set*)<br>Time:<br>Courtroom:   6, 17th Floor<br><br>Chief Judge Vaughn R. Walker |

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      ATTORNEY FEES MAY BE AWARDED ONLY TO A "PREVAILING PARTY"
        AND MUST BE REASONABLE IN RELATION TO THE RESULTS OBTAINED   . . 4

II.     PLAINTIFFS' FEE APPLICATION IS PREMATURE.  . . . . . . . . . . . . . . . . . . . . . . . 6

III.         THE NUMBER OF HOURS FOR WHICH PLAINTIFFS SEEK
             COMPENSATION ARE UNREASONABLE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.      Plaintiffs' Documentation of Their Fee Request Is Improper.  . . . . . . . . . . . . . 9

        B.      Plaintiffs' Request Should be Reduced for Excessive Overstaffing. . . . . . . . . 12

        C.      Plaintiffs' Fee Request Should Also Be Reduced for Unproductive or
                Unnecessary Hours  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        D.      The Court Should Also Exclude Other Unproductive Hours and Time
                Related to Vague Entries.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        E.      Hours Related to Researching Punitive Damages Should Be Eliminated . . . . . . 23

        F.      Hours Related to "Fees-on- Fees" Should Be Reduced Accordingly. . . . . . . . . 23

IV.     PLAINTIFFS RELY ON THE WRONG HOURLY RATES.  . . . . . . . . . . . . . . . . . . 23

V.      PLAINTIFFS ARE NOT ENTITLED TO THE EXPENSES THEY SEEK. . . . . . . . . 24

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**INTRODUCTION**

On March 31, 2010, the Court granted plaintiffs' motion for partial summary judgment and held that the Government Defendants were liable for damages based on the Court's finding that plaintiffs were subject to warrantless surveillance in violation of Section 110 of the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1810 (hereafter "Section 1810") (Dkts. 721/115).[1/]  The Court directed plaintiffs to submit a proposed judgment setting forth the specific damages and relief they seek, and plaintiffs did so on April 16, 2010.  *See* Dkts. 723/117.

In their proposed judgment, plaintiffs requested statutory damages of $20,400 per plaintiff and punitive damages of $183,600 per plaintiff, for a combined total of $612,000 in damages.  *See id.*  Plaintiffs also requested various declaratory and injunctive relief.  *See id.*  The Government submitted a written response opposing the entry of judgment and the particular relief plaintiffs seek.  *See* Dkts. 727/119.  In addition, the Court separately ordered plaintiffs to support their claim for punitive damages.  *See* Dkts. 724/118.  Plaintiffs submitted a brief in support of such damages on May 7, 2010, *see* Dkts. 729/122, and the Government filed a brief in opposition on May 21, 2010, *see* Dkts. 730/123.  The Court has not yet entered judgment in this case nor awarded any relief to the plaintiffs.

By Order dated June 4, 2010 (Dkts. 732/124), the Court directed plaintiffs to file an application for attorney fees and, on July 7, 2010, plaintiffs filed a Motion for Attorney Fees (and costs), accompanied by eight declarations.  *See* Dkts. 738/128.  Plaintiffs seek over $2.6 million to compensate their attorneys for 5,442.6 hours dating back to the inception of this litigation in February 2006.  Plaintiffs also seek over $22,000 in costs.  Defendants hereby oppose plaintiffs' request for attorney fees and costs.

**SUMMARY OF ARGUMENT**

As a threshold matter, consideration of plaintiffs' motion is premature.  Only a "prevailing party" —that is, a party that has obtained a judgment or consent decree providing

---

[1] These two docket citations are to the MDL docket (3:06-md-01791-VRW) and the docket in this case (3:07-cv-00109-VRW).

some actual relief against a defendant—is eligible for attorney fees and, as noted, no judgment affording any relief to plaintiffs has been entered by the Court.  Indeed, Rule 54(d)(2)(B)(ii) of the Federal Rules of Civil Procedure requires that a motion for attorney fees and expenses "must specify the judgment" entitling the movant to the award.  This is not a mere formality.  The "most critical factor" in determining a reasonable fee is the results obtained in the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 436 (1983).  In particular, a key factor in determining a reasonable fee is how much damages are awarded in relation to the damages sought, including whether any punitive damages sought are granted.  *See McCown v. Fontana*, 565 F.3d 1097, 1104 (9th Cir. 2009);  *McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805, 808, 810 (9th Cir. 1994).  Until judgment is entered granting or denying the relief plaintiffs seek, the reasonableness of a fee award cannot be addressed or decided.  However the parties may now attempt to analyze the "lodestar" reasonable fee, that analysis will be hypothetical, speculative, and incomplete until relief is actually awarded.

Recognizing that plaintiffs may obtain some relief when judgment is entered, the lodestar fee they seek ($2.6 million) is excessive and unreasonable, even assuming plaintiffs obtain the entire $612,000 damage award requested.  To begin with, in submitting a fee application, a prevailing party is required to exercise "billing judgment" by making a good faith effort to exclude from the request hours that are excessive, redundant, or otherwise unnecessary. *Hensley*, 461 U.S. at 434.  "Hours that are not properly billed to one's client also are not properly billed to one's adversary . . . ."  *Id.*  Plaintiffs' counsel have not attempted to exercise such judgment.  Instead, it appears they simply summarized all of the hours and activities they undertook since 2006 and left it for the Defendants and Court to sort out.  That is not the proper approach to submitting a fee application.

The initial considerations in reducing a fee award are whether the hours requested have been adequately documented; whether the request reflects overstaffing and duplication of effort by counsel; and whether hours have been expended on activities that were unproductive, unnecessary, or otherwise unreasonable.  *See Hensley*, 461 U.S. at 433-34; *Sorenson v. Mink*,

239 F.3d 1140, 1146-47 (9th Cir. 2001).   Plaintiffs' fee request should be reduced for all of these reasons.

First, the documentation provided by plaintiffs is plainly inadequate.  Plaintiffs' counsel have submitted eight declarations summarizing their work on this case and have not produced contemporaneous billing records.   These declarations repeatedly lump together multiple activities into blocks of hours for various ranges of dates.  Some entries summarize activities by plaintiffs counsel for a few days, weeks, months, in some instances nearly one year's worth of activities.  Courts have repeatedly criticized this practice of "block billing" because it renders the task of determining how much time plaintiffs' counsel reasonably spent on particular activities extraordinarily difficult.  By itself, plaintiffs' broad use of block billing warrants up to a 30% across-the-board reduction in the total hours plaintiffs seek.

In addition, plaintiffs' request should be reduced to account for excessive duplication.  In numerous instances, multiple attorneys seek fees for working on the same submissions and issues, attending the same hearings, and for repeatedly "consulting" one another.  All the major activities in the case were staffed by five to seven plaintiffs' counsel (often several billing at senior "partner" rates).  Plaintiffs' counsel made no effort to reduce such redundancies in submitting their fee application.  Defendants have attempted to identify the hours where excessive consultation and duplicative staffing occurred, and we submit that significant reductions to those hours are warranted.

The Court should also exclude as unproductive, unnecessary, and unreasonable numerous hours that had no direct bearing on the grant of partial summary judgment on plaintiffs' FISA claim.  For example, nearly two years of this case was devoted to litigating the Government's state secrets privilege assertion, which was upheld on appeal, subject to a remand on whether it was preempted by FISA Section 1806(f).  And, initially on remand, plaintiffs' original complaint was dismissed for lack of standing in July 2008.  Similarly, plaintiffs seek all their fees for extensive hours devoted to obtaining access to classified information.  That issue was intensely disputed from the outset of the case, but the Court ultimately directed plaintiffs to seek summary

judgment based solely on publicly available information.  Even if some of the time expended by plaintiffs' counsel during previous phases of the case is reasonably attributable to whatever results plaintiffs obtain, they would be far fewer than the hours plaintiffs seek to have compensated.

To complete the initial lodestar calculation, plaintiffs' contention that they are entitled to the current 2010 hourly rate under the *Laffey* matrix (adjusted for the San Francisco Bay Area) is wrong.  Accepting the Court's practice of applying the *Laffey* rates, plaintiffs would be entitled to no more than the historical *Laffey* rate for the years in which services where rendered (2006-2010).  In addition, this Court has previously adjusted the hourly rate further for the locality where counsel operate, and here only two counsel operate in the Bay Area.

Based on the applicable rates, Defendants have attempted to set forth an initial determination of what the maximum reasonable fee could be assuming that plaintiffs obtain all the relief they seek—including punitive damages.  On that basis, Defendants submit that no more than approximately $606,116 for 1,325 combined hours could reasonably be awarded in attorney fees upon the grant of that full relief, and these figures would have to be reduced if punitive damages are not awarded.  *See* Appendix 1 (Initial Lodestar Summary Charts).

## **ARGUMENT**

## I.    **ATTORNEY FEES MAY BE AWARDED ONLY TO A "PREVAILING PARTY" AND MUST BE REASONABLE IN RELATION TO THE RESULTS OBTAINED**.

A plaintiff must be a "prevailing party" to recover attorney fees, and to qualify as a prevailing party, a plaintiff  "must obtain an enforceable judgment against the [government] . . . or comparable relief through a consent decree or settlement." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992); *Hewitt v. Helms*, 482 U.S. 755, 760 (1987); *see also Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598, 603-04 (2001).  The determination that a plaintiff is the "prevailing party" merely brings him across the "threshold" of eligibility, and it remains for the district court to determine what fee is "reasonable." *Hensley*, 461 U.S. at 433.

"The most useful starting point for determining the amount of a reasonable fee is the

number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."
*Hensley*, 461 U.S. at 433. "This calculation provides an objective basis on which to make an
initial estimate of the value of a lawyer's services." *Id*; *see also Perdue v. Kenny A*., 130 S.Ct.
1662, 1671-1673 (2010); *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002); *Schwarz v. Secretary
of Health & Human Servs.*, 73 F.3d 895, 901 (9th Cir. 1995); *Albion Pacific Property Resources
LLC v. Seligman*, 329 F. Supp. 2d 1163 (N.D. Cal. 2004) (Walker, J.).

In making this determination, "[t]he district court . . . should exclude from this initial fee
calculation hours that were not 'reasonably expended.'" *Hensley,* 461 U.S. at 434. The
assessment of reasonableness is made by reference to standards established in dealings between
paying clients and the private bar, *id.* at 434, and the burden is on the party seeking fees to
demonstrate, with sufficient evidence, that the hours worked and rates claimed are reasonable,
*id*. at 433-34; *accord* <u>Schwarz</u>, 73 F.3d at 906 (burden of showing that hours and fees are
reasonable falls squarely upon the plaintiffs).

> Cases may be overstaffed, and the skill and experience of lawyers
> vary widely. Counsel for the prevailing party should make a good
> faith effort to exclude from a fee request hours that are excessive,
> redundant, or otherwise unnecessary, just as a lawyer in private
> practice ethically is obligated to exclude such hours from his fee
> submission.

*Hensley* at 434; *accord Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir.
2000) (citation omitted). The Supreme Court in *Hensley* noted in particular:

> In the private sector, "billing judgment" is an important component
> in fee setting. It is no less important here. Hours that are not
> properly billed to one's client also are not properly billed to one's
> adversary pursuant to statutory authority.

*Id.* (citation omitted); *accord Albion Pacific Property*, 329 F. Supp. 2d at 1168; *see also Perdue,*
130 S.Ct. at 1672 (the lodestar method "produces an award that *roughly* approximates the fee
that the prevailing attorney would have received if he or she had been representing a paying
client who was billed by the hour in a comparable case.").[2]

---

[2] As this Court has explained, before the lodestar method was developed, the Ninth
Circuit applied the twelve-factor test set forth in *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67,
70 (9th Cir.1975), to determine attorney fee awards in fee-shifting cases. *See Albion Pacific*,

The determination of the lodestar—reasonable hours multiplied by a reasonable hourly rate— "does not end the inquiry;" rather, the "crucial" and "most critical" factor in deciding a reasonable fee is the "results obtained." *Hensley*, 461 U.S. at 434, 436.  The key inquiry on which the district court "should focus" is the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*  A prevailing party may recover a fee award based on all hours reasonably expended only "if the relief obtained justified that expenditure of attorney time." *Id.* n.11.  Hence, "if a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436.

Accordingly, in setting a "reasonable" fee, the district court must "consider the relationship between the amount of the fee awarded and the results obtained." *Hensley,* 461 U.S. at 437.  Even a finding that plaintiff has obtained "significant" relief "does not answer the question of what is 'reasonable' in light of that level of success." *Hensely* at 439.  "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley* at 439-40; *accord Schwarz*, 73 F.3d at 901.

## II.   PLAINTIFFS' FEE APPLICATION IS PREMATURE.

Based on the foregoing principles, plaintiffs' fee application is premature.  At this point, the Court has entered solely an interlocutory ruling on partial summary judgment in plaintiffs' favor, limited to the issue of liability, but has not entered judgment affording any specific relief.  That does not suffice to render plaintiff a prevailing party eligible for attorney fees.  *See Hewitt,* 482 U.S. at 760 (where a party receives only a favorable interlocutory ruling but no relief such as damages, an injunction, declaratory judgment, or relief through a consent decree, it is not a

---

329 F. Supp. 2d at 1166-67.  "The lodestar method greatly simplified this analysis by limiting the court's consideration to two factors: the reasonableness of the number of hours and the reasonableness of the hourly rate." *Id.* at 1167.  At least five of the *Kerr* factors have been deemed "subsumed in the initial lodestar calculation." *See  Perdue*, 130 S.Ct. at 1673; *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 & n. 9 (9th Cir. 1996).  The remaining *Kerr* factors are not at issue here.  *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1104 (N.D. Cal. 2003) (Walker, J.) (listing non-subsumed *Kerr* factors).

prevailing party eligible for attorney fees).  Again, this is not a mere technicality that can be cured by the entry of judgment before fees are actually awarded.  The issue now before the Court —the reasonableness of a fee award—cannot be fully addressed until specific relief is afforded. This is especially so where damages are being sought.

In *Farrar v. Hobby*, *supra*, the Supreme Court made clear that the amount of damages "does bear on the propriety of fees awarded." 506 U.S. at 574.

> "Where recovery of private damages is the purpose of ... civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought."

*Id.* at 575 (quoting *Riverside v. Rivera*, 477 U.S. 561, 585 (1986) (Powell, J., concurring in judgment)).  Such a comparison promotes the court's "central" responsibility to "make the assessment of what is a reasonable fee under the circumstances of the case." *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989).  In some cases (as in *Farrar* itself), an award of damages may be so "nominal" as to justify no fee at all.  *Farrar*, 506 U.S. at 575.  But in any case, "in judging the plaintiff's level of success and the reasonableness of hours spent achieving that success, a district court should 'give primary consideration to the amount of damages awarded as compared to the amount sought.'" *McCown v. Fontana*, 565 F.3d at 1104.

In *McCown*, the plaintiff received $20,000 in damages as part of a settlement agreement and no other relief—one-fourth of the damages sought in the complaint and one tenth of what was demanded in settlement.  On this basis, the Ninth Circuit held that "it is unreasonable to grant his attorneys more than a comparable portion of the fees and costs they requested," and directed the district court on remand to "take into account [plaintiff's] limited success when determining a reasonable fee award." *McCown*, 565 F.3d at 1104-05.[3]  In particular, whether or

---

[3]  *See also Corder v. Brown*, 25 F.3d 833, 836-37 (9th Cir. 1994) (case remanded to reconsider fee amount in light of *Farrar* where plaintiff received $24,006 in damages out of $1 million requested); *Toussaint v. McCarthy*, 826 F.2d 901 (9th Cir. 1987) (reducing lodestar by 37.5% where plaintiff did not obtain all injunctive relief sought).  *Cf. Caudle v. Bristow Optical Co.*, 224 F.3d 1014,1029 n.11 (9th Cir. 2000) (not be proper to reduce a fee award without explanation merely because an amount of recovery is modest, but permissible to do so based on the degree of success obtained) (citing *Hensley*, 461 U.S. at 436).

not punitive damages are awarded factors into a determination of a reasonable fee.  In *McGinnis v. Kentucky Fried Chicken*, *supra*, the court held that it was an abuse of discretion to award the same amount of fees regardless of whether punitive damages were awarded.  *See McGinnis*, 51 F.3d at 810.  In that case, the plaintiff's "extent of success" dropped from $234,000 to $34,000 when punitive damages were excluded.  *See id*.  The court remanded with instructions that the fee award be reduced so that "it is commensurate with the extent of plaintiff's success."  *Id*.  The court noted that "[l]awyers might reasonably spend $148,000 worth of time to win $234,000 . . . [b]ut no reasonable person would pay lawyers $148,000 to win $34, 000."  *Id.*[4]

In this case, the plaintiffs are seeking a combined total of $612,000 in damages for three plaintiffs: the Al-Haramain Islamic Foundation of Oregon; Wendell Belew; and Asim Ghafoor.  Of that total, $550,800 is sought in total punitive damages ($183,600 per plaintiff) and $61,200 in statutory damages ($20,400 for each plaintiff).  The Government has argued that plaintiffs have not met their burden of proof to support the actual damages sought and that, at most, $2,000 in minimum statutory damages could be awarded to plaintiffs Belew and Ghafoor and no punitive damages may be awarded.  *See* Dkts. 727/119 (Defendants' Opposition to Proposed Judgment) and Dks. 730/123 (Defendants' Opposition to Request for Punitive Damages).  Whether any damages are awarded and how much—in particular whether punitive damages are awarded—are critical factors in determining a reasonable fee.  This is not a question of whether a fee award must be "proportionately" reduced by the same percentage as a reduction in damages sought.  The law is clear that, even where the test is not "strict proportionality," the amount of damages awarded must be *compared* to the amount sought in assessing fees.  *McCown*, 565 F.3d at 1104; *see also McGinnis*, 51 F.3d at 809-10.[5]  Because the most basic information needed to

---

[4] *Cf.  Mendez v. County of San Bernardino*, 540 F. 3d 1109, 1126 (9th Cir. 2008)(award of punitive damages takes the award out of the "nominal" category under *Farrar*); *Thomas v. City of Tacoma*, 410 F.3d 644, 648 (9th Cir. 2005) (same).

[5] Even where damages awarded are nominal, or non-monetary relief is granted, an award of fees may be reasonable depending on the significance of the legal issue on which plaintiff claims to have prevailed or whether the litigation accomplished some public goal.  *See Mahach-Watkins v. Depee*, 593 F.3d 1054, 1059-63 (9th Cir. 2010);  *McCown*, 565 F.3d at 1105 (citing

evaluate the reasonableness of any fee award is presently unknown—whether damages will be

awarded, including punitive damages, or some other relief will be granted—plaintiffs' fee

application is premature.[6/]

### III. THE NUMBER OF HOURS FOR WHICH PLAINTIFFS SEEK COMPENSATION ARE UNREASONABLE.

Plaintiffs' demand for over $2.6 million in fees to compensate them for 5,442.6 hours

dating back to the first day of the case is excessive and unreasonable—even assuming plaintiffs

obtain some "significant" relief or all the relief they seek.  Courts reduce fee awards based on a

variety of factors, including specifically for: (i) inadequate documentation; (ii) overstaffing and

duplication of effort by plaintiffs' counsel; and (iii) hours that were unproductive or otherwise

unreasonable.  *See Hensley*, 461 U.S. at 433-34; *Sorenson*, 239 F.3d at 1146-47; *Chalmers v.

City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986); *Role Models America, Inc. v.

Brownlee*, 353 F.3d 962, 971-73 (D.C. Cir. 2004) (50% reduction in hours for inadequate

documentation and duplication).  Reductions based on all of these factors should be made here).

#### A. Plaintiffs' Documentation of Their Fee Request Is Improper.

A substantial reduction in the number of hours plaintiffs seek is warranted based on the

inadequate documentation of their fee request.  Plaintiffs have failed to produce

contemporaneous billing records, and the declarations they have substituted are rife with "serial"

---

*Riverside v Rivera*, 477 U.S. at 572; *Morales*, 96 F.3d at 364-5.  However, this ground for
recovery cannot turn on a mere liability determination that a plaintiff's rights were violated, but
must be based on some additional way in which the judgment effected a change in civil rights
policy.  *See Benton v. Oregon Student Assistance Commission*, 421 F.3d 901, 904-908 (9th Cir.
2005) (no public goal served where challenged policy changed prior to judgment); *cf. Macach-
Watkins*, 593 F.3d at 1062 (judgment against officer for using deadly force favored fee award as
future deterrent).

[6] Courts have also recognized that the resolution of attorney fees may be appropriately
deferred "until the litigation is final . . . [so as to] avoid deciding an issue that may become moot
if the government prevails on appeal.'" *Harmon v. United States*, 101 F.3d 574, 587 (8th Cir.
1996); *see Poland v. Chertoff*, 494 F.3d 1174, 1187 (9th Cir. 2007) (after damage award was
vacated on appeal, plaintiff was not a prevailing party entitled to attorneys' fees); *U.S. ex rel.
Walton Tech., Inc. v. Weststar Eng'g, Inc*., 290 F.3d 1199, 1202 (9th Cir. 2002) (where judgment
was reversed and remanded, district court's award of attorneys' fees was premature).

or "block billed" entries that impermissibly intermix the time spent on multiple activities.

The Supreme Court stated in *Hensley* that the prevailing party "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437; *see id.* at n.12 (counsel's records must provide a proper basis for determining how much time was spent on particular claims); *see also Schwarz*, 73 F.3d at 906 ("[A]n attorney should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."); *Chalmers*, 796 F.2d at 1210 ("[i]n determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended."). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley* at 433; *accord Trustees of Directors Guild of America-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 433 (9th Cir. 2000). And both the Supreme Court and Ninth Circuit have emphasized that they will not "view with sympathy" claims that a district court abused its discretion in awarding unreasonably low attorneys' fees where the record does not provide a proper basis for determining time spent on specific claims. *Hensley*, 461 U.S. at 437 n.12.

Plaintiffs state that they have kept contemporaneous billing records, but they have not produced them with their fee application and will only make them available for *in camera* inspection.[7/] In their place, plaintiffs seek an award based on summaries of those records in declarations. Defendants object to this practice. While Local Rule 54-5(b) permits the use of declarations in a *motion* for attorney fees, *Hensley* indicates that a fee award should be based on data contained in billing records, and there is no justification for not producing these records to the Defendants to assist in verifying the activities for which plaintiffs seek to be compensated and the time spent on those activities.[8/] Moreover, this is a circumstance where the Court should

---

[7] *See* Declaration of Jon Eisenberg ¶ 12; Declaration of Steve Goldberg ¶ 14; Declaration of Thomas Nelson ¶ 12; Declaration of William Hancock ¶ 10; Declaration of Zaha Hassan ¶ 10; Declaration of Lisa Jaskol ¶ 9; Declaration of Ashlee Albies ¶ 7.

[8] This is not a circumstance where a fee applicant seeks to reconstruct billing information where contemporaneous records were not kept. *See Fischer v. SJB-P.D. Inc.,* 214 F.3d 1115,

require production pursuant to Local Rule 54-5(b)(2).  The Ninth Circuit has held that a district court may abuse its discretion by relying on summaries of billing records in declarations that are not sufficient to distinguish time spent on different claims.  *See Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1230-31 (9th Cir. 1997).   That is what plaintiffs have submitted.

The declarations submitted by plaintiffs' counsel utilize the practice of "serial" or "block billing" whereby counsel include multiple distinct activities in a block of time without identifying and segregating the time devoted to a particular task.  Plaintiffs' counsel use this practice to describe their work over various periods—ranging from a few days, weeks, or months.  Some of plaintiffs' counsel use this practice more than others by including more items in the block and using blocks for longer periods of time.  *See* Nelson Declaration; Goldberg Declaration.  But declarations submitted by all of plaintiffs' counsel contain "block billed" hours—in some cases encompassing nearly every hour in the declaration.  *See* Hassan Declaration; Hancock Declaration; Jaskol Declaration; Albies Declaration; *see also* Appendix 3 (Block Billing Calculation).

Time records that are "submitted in a form not reasonably capable of evaluation do not satisfy the 'burden of submitting detailed time records justifying the hours claimed.'" *Gates v. Stewart*, 987 F.2d 1450, 1452-53 (9th Cir. 1993) (quoting *Chalmers*, 776 F.2d at 1210).   In particular, the practice of serial or block billing is disfavored by courts reviewing fee applications "because it makes it much more difficult to determine how much time was spent on particular activities."  *Welch v. Metropolitan Life Insurance Co*., 480 F.3d 942, 948 (9th Cir. 2007) (citing *Role Models America,* 353 F.3d at 971 (reducing requested hours because counsel's practice of block billing "lump[ed] together multiple tasks, making it impossible to

---

1121 (9th Cir. 2000) ("lack of 'contemporaneous records' is not a basis for denying . . . fee request in its entirety"); *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1542 (9th Cir. 1992) (failure to keep adequate contemporaneous records not a basis to deny fee award where the records can be reconstructed from agendas, summary of meetings, notes, and time sheets of co-counsel).  Here, plaintiffs concede they have contemporaneous records, but have not produced them.

evaluate their reasonableness")).  The use of declarations with block summaries is especially inappropriate where plaintiffs' counsel assert they kept contemporaneous records in *tenths* of an hour.[9]

The Ninth Circuit in *Welch* concluded that block billing "may increase time by 10% to 30%."  *See Welch*, 480 F.3d at 948 (citing The State Bar of California Committee on Mandatory Fee Arbitration, Arbitration Advisory 03-01 (2003).  Accordingly, courts have identified block billing as an independent ground for an overall reduction in the hours claimed.  *Mendez*, 540 F. 3d at 1128; *see also Gadberry v. Astrue*, 2009 WL 2983086, at *1 (D. Or. Sept. 15, 2009); *Gaines v. Douglas County School Dist.*, 2009 WL 2710063, at *3 (D. Nev. Aug. 25, 2009); *Settlegoode v. Portland Public Schools*, 2005 WL 1899376, at *7 (D. Or. Aug. 9, 2005); *see also Keith v. Volpe*, 644 F. Supp. 1317, 1322 (C.D. Cal. 1986) (explaining that "serial billing" seriously hampers the court.)  Such percentage cuts "are acceptable, and perhaps necessary tools for district courts fashioning reasonable fee awards." *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).

Defendants have attempted to calculate the  number of hours per counsel that are block billed, as required by *Welch*, 480 F.3d at 948.  *See* Appendix 3 (describing methodology and summarizing data).  Given the widespread use of this practice in so large a fee request (seeking $2.6 million and over 5400 hours), and involving so many counsel, a 30% reduction of these block billed hours is warranted and would be consistent with the findings of the California Bar Report.  *See id.*

**B.     Plaintiffs' Request Should be Reduced for Excessive Overstaffing.**

The number of hours for which plaintiffs' counsel seeks compensation should also be reduced to account for overstaffing and duplicative work by multiple counsel on the same task. *Tahara v. Matson Terminals*, 511 F.3d 950, 955 (9th Cir. 2007) (in calculating number of hours reasonably expended, a district court is to exclude hours that are redundant).  "A party is

_____

[9] *See* Eisenberg Decl. ¶ 11; Goldberg Decl. ¶ 15; Nelson Decl. ¶11; Hancock Decl. ¶ 8; Hassan Decl. ¶ 6.

certainly free to hire and pay as many lawyers as it wishes, but cannot expect to shift the cost of any redundancies to its opponent." *Settlegoode*, 2005 WL 1899376, *7.  The exercise of "billing judgment" is especially necessary to eliminate redundant hours for overstaffing.

> When attorneys hold a telephone or personal conference, good "billing judgment" mandates that only one attorney should bill that conference to the client, not both attorneys.  The same good "billing judgment" requires attorneys not to bill for more than two attorneys to review pleadings or to attend oral argument or trial.

*Id*.  Plaintiffs have made no effort to reduce their time for work by several counsel on particular activities.  Two aspects of overstaffing and redundancy are reflected in plaintiffs' declarations: (1) excessive "consultations" between co-counsel; and (2) multiple attorneys working on the same project or attending the same hearing.

    (1)    <u>Excessive Conferencing</u>

The declarations of plaintiffs' counsel refer to "consultations" with co-counsel approximately 162 times.  *See* Appendix 4.  Courts have specifically cut back hours for excessive conferencing.  *See Welch*, 480 F.3d at 949 (absent persuasive justification reducing time for intra- office conference by experienced attorneys); *Keith*, 644 F. Supp. at 1324 (reduction for excessive non-serial conference time).  "Although . . . co-counsel and staff must communicate with each other to insure effective representation, billing at a full rate for each attorney or staff member for such essentially duplicative or instructional effort requires adjustment."  *See Zhang v. GS Services, LP,* 537 F. Supp. 2d 805, 812-813 (E.D. Va. 2008) (66% reduction where two experienced co-counsel conferred repeatedly on case).  A reduction for excessive conferencing would likewise be warranted here.

Plaintiffs' data does not reveal how many lawyers participated in each consultation, when, or how long the consultations occurred.  But their documentation does reveal that seven attorneys[10] (five at partner rates) would each bill their clients for a given co-counsel consultation.  That reflects no billing judgment and is unreasonable.  Defendants calculate that

---

[10] No compensation should be awarded for the 19.7 hours expended by Kenneth Kreuscher, who is not a counsel of record in this case.  Also, the hours for which he seeks compensation are described in wholly vague terms and are therefore unsupported.

the number of hours in the blocks containing these "co-counsel consultation" references totals 4,177.4 out of 5,442 hours sought. *See* Appendix 4. The Court should reduce the total block hours referring to consultations by 25% or 1,056 hours. *See id.* Such a reduction is supported by the fact that the data contains 162 separate billing entries for consultations, seven (7) different lawyers identified this activity, the case lasted for five years, and the total block hours at issue are voluminous. Those hours are excessive and should be excluded from the fee award.[11/]

(2)     Overstaffing

Aside from excessive conferencing, plaintiffs' documentation reveals that multiple lawyers worked on the same activity and attended the same hearings, and, thus, would have billed their client for the same work. Once again, plaintiffs made no effort to eliminate this redundancy. "Courts ought to examine with skepticism claims that several lawyers were needed to perform a task, and should deny compensation for such needless duplication as when three lawyers appear for a hearing when one would do." *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004). While some degree of duplication might be reasonable in some circumstances, plaintiffs' declarations indicate that four to five attorneys would have billed time for nearly all the major activities in this case. *See* Appendix 5. Examples of the excesses revealed in the data include:

*        Five attorneys (three at "partner" levels) seek compensation for time working on plaintiffs' opposition to the Government's first motion to dismiss in June 2006 based on the state secrets privilege. *See* Appendix 5 at 6.

*        Seven attorneys (four at "partner" levels) seek compensation for time working on plaintiffs' opposition to interlocutory appeal in 2006-07. *See id* at 8.

*        Seven attorneys (five at "partner" levels) seek compensation for time working on plaintiffs' opposition to the Government's second motion to dismiss in 2008. *See id* at 11-12.

*        Seven attorneys (five at the "partner" level) worked on plaintiffs' partial motion for summary judgment in 2009. *See id* at 19.

_____

[11]  Defendants submit there should be a separate reductions for block billing and excessive consultations. Block billing results in "padding" of time in the overall block by failing to distinguish time for multiple different activities, not simply consultations. Also, the sheer number of instances in which consultations are mentioned indicates that this is an especially significant component of time within the block.

It also appears that all counsel seek compensation for their attendance at various hearings in this case.  Five to six plaintiffs' counsel were identified on the record for a telephone conference with Judge King on April 25, June 19, and June 27,  2006.  *See* Appendix 5 (Attaching Transcript Cover Pages).   Five plaintiffs' counsel (four at partner level) attended the hearing on the Government's first motion to dismiss in August 2006.  *See id*.  Five plaintiffs' counsel (four at partner level) attend the hearing on June 3, 2009, on the Courts Order to Show Case regarding the entry of a protective order.  *See id*.  Four plaintiffs' counsel (all at partner level) attend the hearing on September 23, 2009, on plaintiffs' motion for partial summary judgment.  *See id*.  So far as we can tell from the confusing block data, plaintiffs appear to seek compensation for the time of all counsel attending these hearings.  At most, a reasonable fee award would compensate two attorneys who attended these hearings.  *See Democratic Party*, 388 F.3d at 1286 (courts should deny compensation for such needless duplication as when three lawyers appear for a hearing when one would do.); *Role Models of America*, 353 F.3d at 972 (no basis presented to support three senior attorneys billing at least $400 for participating in the case); *Keith v. Volpe*, 644 F. Supp. at 1323 (reduction of time where more than two attorneys attended hearing); *Cruz v. Alhambra School District*, 601 F. Supp. 2d 1183, 1191-92 (C.D. Cal. 2009) (reductions where four to five attorneys worked on activities and attended events).

Because no semblance of billing judgment is reflected in plaintiffs' application to reduce for excessive staffing, a further reduction should be made in the total number of hours for which plaintiffs' seek compensation.  Appendix 5 sets forth a calculation of the number of duplicative hours incurred by multiple counsel on particular activities.  Estimates of the time devoted to particular projects were made by taking the number of hours in a block entry that identifies the subject area of the project (*e.g*., complaint) and dividing by the number of subject areas identified in block.  Given the repeated use of multiple counsel on all major activities in the case, including attendance at hearings, a separate 25% reduction in the particular time devoted to these

activities is warranted.[12]

## C.   Plaintiffs' Fee Request Should Also Be Reduced for Unproductive or Unnecessary Hours.

In addition to reductions for inadequate documentation and duplication, a third independent ground exists to reduce the hours sought by plaintiffs.  Even where a plaintiff has obtained "excellent results" to warrant a "fully compensatory fee," this does not mean it should be awarded fees for <u>all</u> hours expended, as plaintiffs here seek, but only for hours "*reasonably expended.*"  *Hensley*, 461 U.S. at 435.  Even where only a single claim is litigated to success, as here, a party is not entitled to 100% of their fees.  *See California State Foster Parents Assn v. Wagner*, 2009 WL 4823193 *9 (N.D. Cal. 2009) (Alsup, J.).

> If the test is plaintiffs' "degree of success," then the question is not whether a complaint is styled to include one or many causes-of-action.  Rather, the question is how the relief *sought* compares to the overall result *obtained*.

*Id*. (original emphasis); *see also Sealy Incorporated v. Easy Living, Inc.*, 743 F.2d 1378, 1384 (9th Cir. 1984) (court should examine whether the hours expended were "reasonably necessary to the effective prosecution of" the claim).

Here, plaintiffs seek compensation for all hours incurred by their counsel from the beginning of the case.  Again assuming plaintiffs obtain "significant" relief or all the relief they seek, that would not be a reasonable award.  For example, if plaintiffs were to obtain the full $612,000 in statutory and punitive damages they seek, an award of $2.6 million in fees—four times the amount of damages—would still be unreasonable.  If plaintiffs were to obtain solely the amount requested in statutory damages—$61,200—the fee award requested would be forty times that amount.  And if plaintiffs were to obtain just $2,000 in minimum statutory damages (which Defendants contend is the most that could be supported under the Court's liability determination, *see* Dkts. 727/119), the fee award would be 1300 times the damage award.  In any

---

[12]  In calculating a reduction for duplicative activities, Defendants attempted to account for the separate reductions for excessive consultations set forth in Appendix 4 by attempting to exclude hours for those "consultations" from the time estimated to have otherwise been spent on a particular project on which multiple counsel worked.  *See* Appendix 5.

event, a major lodestar reduction is warranted here.  *See, e.g.*, *Stewart v. County of Sonoma*, 634 F. Supp. 773, 777-780 (N.D. Cal. 1986) (Schwarzer, J.) (reducing lodestar request of $800,000 and 5400 hours to 820 hours and $100,000, holding that "billing judgement rules out the submission of a bill for services and disbursements of $925,000 for a case with a probable verdict value of less than $100,000").  An overview of the various issues litigated during phases of this case that preceded plaintiffs' summary judgment motion on liability further demonstrates that the amount plaintiffs seek is unreasonable.

*February 2006-2007*:  *Litigation on the Government's State Secrets Privilege*:  The first two years of this case—from February 2006 through the Ninth Circuit's Decision on the first appeal in November 2007—were primarily devoted to litigation over the Government's successful state secrets privilege assertion.  Plaintiffs filed with their original complaint the classified "Sealed Document" inadvertently disclosed to them during administrative proceedings on the designation of the Al-Haramain Islamic Foundation of Oregon as a specially designated global terrorist.  From that point through November 2007, proceedings in this case were focused on whether plaintiffs could use any information in that document to litigate the case in the face of the Government's privilege assertion.  That dispute was never resolved in plaintiffs' favor; indeed, in 2009, the Court ordered that their partial summary judgment not rely on classified information unless the Government used it in defense.  *See* Dkts. 643/96.

In sum, after the initial complaint was filed, the Government moved to dismiss or for summary judgment based on an assertion of the state secrets privilege by the Director of National Intelligence that sought to protect from disclosure, *inter alia*, whether the plaintiffs were subject to the alleged surveillance as well as information contained in the Sealed Document.  In September 2006, Judge King upheld the Government's state secrets privilege assertion with respect to any information confirming or denying whether plaintiffs' communications have been or continue to be intercepted—except with respect to communications allegedly reflected in the Sealed Document.  *See Al-Haramain v. Bush*, 451 F. Supp. 2d 1215, 1224 (D. Or. 2006), *rev'd*, 507 F.3d 1190 (9th Cir. 2007).  The Court considered

whether Section 106(f) of the FISA, 50 U.S.C. § 1806(f), preempted the state secrets privilege but declined to resolve the issue at that stage.  *See id.* at 1230-32.  The court declined to dismiss the case, but certified its decision for interlocutory review pursuant to 28 U.S.C. § 1292(b), *see id.* at 1233.

On November 16, 2007, the Court of Appeals reversed the district court's decision and upheld the Government's state secrets privilege assertion to protect from disclosure information concerning whether or not the plaintiffs had been subject to the alleged surveillance, as well as information contained in the Sealed Document.  *See Al-Haramain*, 507 F.3d at 1202-04.  The Ninth Circuit went on to hold that, without the privileged information, plaintiffs could not establish their standing and their claims would be dismissed.  *See id.* at 1205.  The Court of Appeals remanded without deciding whether FISA Section 1806(f) preempts the privilege.

Plaintiffs devoted 109.59 combined hours opposing the Government's first motion to dismiss and 513.75 combined hours in briefing the merits of the appeal.  *See* Appendix 5 at 6, 9 and 10.  But by November 2007—nearly two years into the case, they had not prevailed on any issue and, indeed, lost the key issue on appeal and faced dismissal of their complaint unless the state secrets privilege was preempted.  *Cf. Atkins v. Apfel*, 154 F.3d 986, 988, 989-90 (9th Cir. 1998) (where plaintiff prevails generally in the case but loses on appeal, district court abused discretion in awarding fees without taking into account the results obtained on appeal).  The time spent in 2006-07 during this phase of the litigation had little bearing on plaintiffs' partial summary judgment victory in 2009, particularly where, on remand, the Court's first substantive ruling resulted in the dismissal of plaintiffs' first complaint.[13]

Plaintiffs' counsel also recorded numerous other hours during 2006 that were unproductive.  For example:

\*  Plaintiffs' counsel devoted a combined total of 62.65 hours in support of a motion by the Oregonian newspaper in 2006 to unseal the Sealed Document—a motion that was denied.  *See* Appendix 5 at 5.

---

[13] This situation is thus not akin to denying a party fees for an unsuccessful motion in connection with a claim in which the party prevailed in the case.  *See Allen v. Bay Area Rapid Transit*, 2003 WL 23333580 (N.D. Cal. 2003) (Walker, J.).

1   \*   Plaintiffs' counsel devoted a combined total of 127.3 hours in 2006 devoted to drafting discovery and in support of a motion to compel discovery, which the Government opposed through its privilege assertion.  Discovery was never allowed in the five years the case has been pending.  *See id*. at 2-3.

2

3   \*   Also in 2006, plaintiffs' counsel devoted 96 combined hours opposing a motion by the Government to deny them continued access to the Sealed Document and plaintiffs have not prevailed on their demand for access in five years.  *See id.* at 5.

4

5   \*   Plaintiffs' counsel also devoted 118.5 combined hours opposing the Government's petition for interlocutory appeal, which was granted, and in opposing a stay pending appeal, which again was granted.  *See id*. at 9.

6

7   \*   Plaintiffs' counsel also devoted 116.9 combined hours opposing transfer of this case to this Court by the Judicial Panel on Multi-District Litigation.  *See id*. at 6-7.

8

9   It would not be reasonable to grant compensation for unproductive hours during this initial phase

10  of the case that had no bearing on the Court's grant of partial summary judgment in 2009.

11          *Dismissal of First Complaint in July 2008*:  After remand, the Government filed a second

12  motion to dismiss or for summary judgment and argued, *inter alia*, that Section 1806(f) does not

13  preempt the state secrets privilege.  *See* Dkts. 432/17.  On July 2, 2008, the Court denied the

14  Government's motion and concluded, *inter alia*, that FISA Section 1806 preempts the state

15  secrets privilege.  *See In re: Nat'l Security Agency Telecomm. Records Litig., Al-Haramain*

16  *Islamic Found. v. Bush*, 564 F. Supp. 2d 1109, 1115-25 (N.D. Cal. July 2, 2008).  However,

17  before proceeding under Section 1806(f), the Court held that plaintiffs must first establish their

18  standing by presenting "enough specifics based on non-classified evidence to establish their

19  'aggrieved person' status under FISA."  *Id*.  The Court concluded at that point that "it is certain

20  that plaintiffs' showing thus far with the Sealed Document excluded falls short of the mark" for

21  establishing their standing, and dismissed the first complaint without prejudice.  *Id*. at 1135.

22          At that point in the litigation, the case had been dismissed, and there was no certainty that

23  plaintiffs would muster sufficient evidence to establish their standing, let alone ultimately

24  become a prevailing party on a claim not yet actually before the Court.  Plaintiffs' request to be

25  compensated for all the hours leading up to the Court's July 2008 dismissal of their lawsuit is

26  unreasonable.  The Court's ruling on FISA preemption does not warrant compensation for these

27  pre-July 2008 hours.  "[A] judicial statement that does not effect the relationship between the

28

plaintiff and the defendant is *not*" equivalent to a judgment rendering plaintiff a prevailing party. *Hewitt*, 482 U.S. at 761; *see also id*. at 763.   Whatever role the Court's FISA preemption ruling came to play in subsequent proceedings, plaintiffs were found to lack standing in July 2008 and it would be unreasonable to compensate plaintiffs' counsel fully for the hours incurred prior to that period.  Accordingly, Defendants set forth in Appendix 6 the hours for which we believe further reductions should be made, and we identify those reductions separately in our lodestar calculation at Appendix 1.

    *Litigation to June 2009 Over Access to Classified Information*:  The immediate next phase of the case entailed a year's worth of litigation (July 2008 to June 2009) focused on whether plaintiffs may obtain access to the Sealed Document and other classified information in order to litigate the case, pursuant to security clearances and protective order procedures established under the rubric of FISA Section 1806(f).  Plaintiffs filed an amended complaint on July 29, 2008, *see* Dkts. 458/35, and relied on various public statements and reports in an attempt to establish that they were "aggrieved persons" subject to alleged surveillance.  The Government filed a third motion to dismiss or for summary judgment and argued principally that the information cited by plaintiffs did not established their standing.  *See* Dkts. at 475/49.  Plaintiffs cross-moved to obtain discovery under FISA Section 1806(f).  *See* Dkts. 472/46.

    On January 5, 2009, the Court denied the Government's third dispositive motion and ordered further proceedings in response to plaintiffs' motion for discovery under Section 1806(f).  *Al-Haramain Islamic Found. v. Bush*, 595 F. Supp. 2d 1077, 1089 (N.D. Cal. Jan. 5, 2009).  The Court held, *inter alia*, that plaintiffs' amended complaint sufficiently alleged plaintiffs' status as aggrieved persons to survive a motion to dismiss and proceed under Section 1806(f).  *See id*. at 1082-86.  The Court also held that due process considerations required that some of plaintiffs' counsel obtain the security clearances necessary to be able to litigate the case, including, but not limited to, reading and responding to the court's future orders.  *Id.*

    This ruling triggered a six month dispute over whether plaintiffs would obtain access to classified information—a dispute that ended in no access being granted.  Notably, the Court

issued an order dated April 17, 2009, which directed the parties "to meet and confer regarding the entry of an appropriate protective order which shall be entered herein before the court rules on the merits." *See* Dkts. 600/84 at 2. In response, the Government set forth its opposition to plaintiffs' proposed order which granted counsel access to classified information. Dkts. 626/89. On May 22, 2009, the Court issued an Order to show cause as to why the Defendants should not be sanctioned pursuant to Rule 37(b)(2)(A)(ii) of the Federal Rules of Civil Procedure for declining to consent to a protective order. *See* Dkts. 620/90 at 3. The Government filed a detailed opposition (Dkts. 636/93) and, after a hearing on June 3, 2009, the Court declined to enter any sanctions or issue a protective order granting the disclosure of classified information to plaintiffs' counsel. Instead, the Court directed plaintiffs to seek summary judgment based solely on publicly available information unless, as noted, the Government sought to use classified information in response to plaintiffs' motion. *See* Dkts. 643/96. In these circumstances, Defendants submit it would be unreasonable for plaintiffs' counsel to obtain all of the time expended during this period (July 2008 to June 2009), and we set forth specific reductions for particular hours during this period that plaintiffs devoted to seeking access to classified information (in general 25% of the hours related to this goal).

*Plaintiffs' Motion for Partial Summary Judgment*: The final phase in this case began in June 2009, when plaintiffs filed a motion for partial summary judgment based solely on public information and obtained a liability determination on their claim brought under FISA Section 1810, 50 U.S.C. § 1810. Defendants recognize that some of the hours incurred in the prior phases of the case described above contributed to the grant of partial summary judgment. But, for the reasons outlined herein, a substantial number of the hours plaintiffs seek should be reduced, and the Court should focus on a number of hours that would have been reasonably expended in connection with plaintiffs' partial summary judgment motion.

Plaintiffs' 2009 motion was not complicated and should not have required substantial time to prepare. Plaintiffs culled various statements from the public record, asserted they established a *prima facie* case that they had standing as aggrieved persons subject to alleged

warrantless surveillance, and argued that the burden be shifted to the Government to disclose information it deemed privileged to create a genuine issue of fact or face the entry of summary judgment.   There was no discovery in the case or any evidentiary proceedings as might be typical of a case commanding over 5,000 hours of counsel's time.   As noted, the litigation was otherwise devoted to whether the Government could protect the Sealed Document and information pertaining to intelligence sources and methods or whether plaintiffs would get access to that information under Section 1806(f) of the FISA.

As a "cross-check" on the reductions Defendants believe should be made in the overall hours sought by plaintiff, the Court could attempt to estimate a number of hours devoted to the development of plaintiffs' partial summary judgment motion that did not concern disputes related to access to classified information or the Sealed Document.   Defendants estimate that plaintiffs' counsel devoted 151 combined hours to their 2009 partial summary judgment motion. *See* Appendix 5 at 19.   Even if all the hours associated with amending the complaint (104 hours), *see id.* at 12-13 are counted, and the time devoted to responding to the Government's third motion to dismiss where prima facie standing was found (87 hours), *see id.* at 14, that would remain a fraction of the time sought for compensation (342 hours).   And if some non-duplicative hours from prior period of the case are considered as well, the total number of hours still would not approach 5,444.6– indeed, it would be far less than 1000 hours.[14]

---

[14] Starting from the 342 hours identified above, if the Court included all the hours plaintiffs' counsel devoted preparing to the first (dismissed) complaint (117) which contained the FISA claim, along with all hours associated with plaintiffs' first attempt at seeking partial summary judgment motion in 2006 (69.5 hours), all hours devoted to plaintiffs work on that motion in 2007 while the case was on appeal (52.65 hours), *see* Appendix 5 at 1, 7, 8, 11, the total would be approximately 581 hours.   If the hours plaintiffs devoted in response to the Government's Second Motion to Dismiss (addressing the FISA preemption issue) are added (200 hours), *see id.* at 11-12, the total rises to 781 hours—still far below the amount sought by plaintiffs.   This illustrates that a relatively discrete number of hours can be identified as related to the grant of partial summary judgment, and even these hours are overstated for the reasons identified above.   It also illustrates the initial lodestar hours identified by the Defendants (1,325) is more than reasonable.

### D.      The Court Should Also Exclude Other Unproductive Hours and Time Related to Vague Entries.

The should also reduce other miscellaneous unproductive hours identified by the Defendants at Appendix 6, including for billing entries that are unreasonably vague. Notably, plaintiffs' counsel devoted 19 combined hours to pursuit of an individual capacity claim against FBI Director Mueller that was dismissed. *See* Appendix 6 at 4, 9, 16, 19. Plaintiffs' counsel also devoted 28 hours in 2009 acting as an *amicus* seeking unsuccessfully to forestall vacatur of decision by the district court in the *Horn v. Huddle* litigation in the District of Columbia upon settlement of that case. *See id*. at 6. These and other unproductive hours listed in Appendix 6 are not reasonably compensable and are reflected in the calculation of unproductive and unreasonable hours set forth in the data at Appendix 1 (Initial Lodestar Summary Charts).

### E.      Hours Related to Researching Punitive Damages Should Be Eliminated.

Defendants have also reduced from an initial lodestar calculation hours devoted by plaintiffs' counsel to researching the question of punitive damages (103 hours combined), because the Court has not yet decided upon that relief and we submit such an award would be unfounded. *See* Appendix 1 (summary charts by counsel listing research on punitive damages as separate reduction).

### F.      Hours Related to "Fees-on-Fees" Should Be Reduced Accordingly.

In addition, the combined 56.6 hours devoted by plaintiffs' counsel to preparing their attorney fees application should be reduced by the same percentage as the rest of their fee award may be reduced. *Thompson v. Gomez*, 43 F.3d 1365, 1367-68 (9th Cir. 1995). Defendants initial lodestar calculation would reduce the possible award from $2.6 million to no more than $606,000 if the full relief sought is granted– approximately a 73% reduction, warranting a 41 hour reduction in fee preparation time.

## IV.   PLAINTIFFS RELY ON THE WRONG HOURLY RATES.

Once it sets the number of reasonable hours, the district court must determine a reasonable hourly rate "according to the prevailing market rates in the relevant community." *Schwarz*, 73 F.3d at 907. This Court's consistent practice has been to rely on the so-called

*Laffey* matrix rates prepared and updated by the Department of Justice.  *See In re HPL Technologies, Inc. Securities Litigation,* 366 F. Supp. 2d 912, 921-22 (N.D. Cal. 2005); *see also Garnes v. Barnhardt*, 2006 WL 249522, at *7 (N.D. Cal. 2006).  Plaintiff contends that the <u>current</u> 2010 *Laffey* matrix hourly rate for the San Francisco Bay Area should apply for the five respective years of the litigation (2006-2010) and for all counsel.  The Government disagrees.  Only the historical *Laffey* matrix rate for those years could be applied here.[15]  The Court has also previously applied the *Laffey* rate adjusted for the locality in which plaintiffs' counsel operates.  *See Martin v. FEDEX Ground Package System*, 2008 WL 548576 * 7 (N.D. Cal. 2008) (applying *Laffey* matrix rate for San Francisco, Sacramento, and Los Angeles (Santa Ana) where counsel operated); *see also In re Chiron Corporation Securities Litigation*, 2007 WL 4249902 *6 (N.D. Cal. 2007) (applying New York and Los Angeles rates).   Defendants set forth the applicable adjusted *Laffey* rates in Appendix 7.

Again as summarized in Appendix 1, Defendants estimate that no more than 1325 hours of the time incurred by plaintiffs' counsel could reasonably be awarded in this case. When multiplied by the applicable hourly rates for each counsel, an initial lodestar fee award could be no more than approximately $606,000.  *See* Appendix 1.  The final lodestar fee can be determined only after the results in the case are known.

## V.   PLAINTIFFS ARE NOT ENTITLED TO THE EXPENSES THEY SEEK.

Plaintiffs' counsel also seek a combined total of $22,000 in expenses, nearly all of it

---

[15] Authority providing that current rates may be utilized to compensate for delay in payments does not apply to the United States.  In *Library of Congress v. Shaw*, 478 U.S. 310, 314 (1986), the Supreme Court reaffirmed the long-standing principle that "[i]n the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award." Courts have recognized, the payment of attorney's fees at current rates amounts to an award of interest.  *See Sorenson v. Mink*, *supra*, 239 F.3d at 1148; *Bernardi v. Yeutter*, 951 F.2d 971, 976 (9th Cir. 1991).  *Cf. Missouri v. Jenkins*, 491 U.S. 274, 281-83 & n.4 (1989) (adjustment to current hourly rate to compensate for delay does not apply to the sovereign immunity of the Federal government). Assuming Section 1810 of the Foreign Sovereign Immunity Act, 50 U.S.C. § 1810, authorizes an award of attorney fees against the United States (which the Government contests), that provision does not authorize interest for the hourly rate applicable to an award of attorney fees.  Hence, only historical rates can be applied in this case.

travel costs.  *See* Pls. Motion at 10.  All of these expenses should be denied.  None of the expenses have been adequately documented, and nearly all the travel costs sought are for multiple counsel attending hearings.  As set forth above, the attendance of no more than two counsel at a hearing should be compensated (and thus, for example, only the long distance travel expenses of plaintiffs' "lead/second chair" counsel (Mr. Goldberg), *see* Goldberg Decl. ¶ 13, could be compensable.  The Government also objects to expenses Mr. Eisenberg seeks of $3,772 for computerized research because he fails to document the hours researched or the subjects researched.  *See Shepard v. Dorsa*, 1998 WL 1799018, at * 4 (C.D. Cal. 1998).

Finally the Government objects to expenses requested by Mr. Nelson of $6,489 (again undocumented) for numerous trips, including to Saudi Arabia to meet with Soliman Al-Buthe, who is not a named plaintiff in this case.  The issue plaintiffs litigated in the case to success—partial summary judgment based on public evidence—did not reasonably require trips to Saudi Arabia for consultations.  The Government also objects to Mr. Nelson's requested expenses of $6,715 for an ethics consultant.  Seven attorneys of record in this case should have been able to assess their ethical obligations without hiring another lawyer, and these expenses are not reasonably related to a particular matter litigated.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for attorney fees should be denied.  The Court should defer an award of fees until after the entry of judgment.  At this stage the initial maximum lodestar amount that plaintiffs' counsel could be awarded could not exceed more than $606,116 if plaintiffs obtain all the relief they seek, and would be subject to reduction if they do not.

Dated: August 5, 2010                    Respectfully Submitted,

                                         MICHAEL F. HERTZ
                                         Deputy Assistant Attorney General

                                         DOUGLAS N. LETTER
                                         Terrorism Litigation Counsel

                                         JOSEPH H. HUNT
                                         Director, Federal Programs Branch

VINCENT M. GARVEY
Deputy Branch Director

_____s/ Anthony J. Coppolino_____
ANTHONY J. COPPOLINO
Special Litigation Counsel

MARCIA BERMAN
Senior Counsel

U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782—Fax: (202) 616-8460

*Attorneys for the Defendants*

List of Appendices

Appendix    1          Summary Charts Initial Lodestar Calculation

Appendix    2          Calculation of Annual Counsel Hours

Appendix    3          Block Billing House By Counsel

Appendix    4          Consultation Hours

Appendix    5          Duplicative Hours

Appendix    6          Other Unreasonable or Vague Hours

Appendix    7          *Laffey* Matrix Rates